Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| RODRÍGUEZ READY MIX. INC.<br><br>*Recurrente*<br><br>v.<br><br>JUNTA DE SUBASTAS DEL MUNICIPIO DE AGUADA<br><br>HORMIGONERA CHAPARRO, INC., D/B/A EXPRESO READY MIX<br>    Licitador Agraciado<br><br>*Recurridos* | TA2026RA00249 | Revisión Administrativa procedente de la Junta de Subastas del Municipio de Aguada<br><br>Subasta Número 8-G; Serie: 2025-2026 Adquisición de Hormigón Pre-Mezclado<br><br>Sobre: Impugnación de Subasta Municipal |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece ante nos, Rodríguez Ready Mix, Inc. (RRM o recurrente) mediante *Solicitud de Auto de Revisión* presentada el 14 de mayo de 2026 y solicita la revocación de la *Notificación de Adjudicación, Subasta Núm. 8-G; Serie: 2025-2026, Adquisición de Hormigón Pre-Mezclado*[1] emitida el 5 de mayo de 2026 por la Junta de Subastas del Municipio de Aguada (Junta de Subastas o recurrida). En el referido dictamen, la recurrida le adjudicó la buena pro de la subasta a la compañía Hormigonera Chaparro Inc. D/B/A Expreso Ready Mix (Hormigonera Chaparro o licitador agraciado) y no al recurrente.

Por los fundamentos expuestos a continuación, ***revocamos*** la resolución impugnada.

---

[1] Apéndice 1 de la *Solicitud de Auto de Revisión*, Anejo *Notificación de Adjudicación-Mun*. A pesar de que el recurrente alegó que la notificación fue recibida el 11 de mayo de 2026, se desprende del anejo precitado que la misiva fue entregada el 8 de mayo 2026.

**I.**

El caso de autos tuvo su génesis el 4 de mayo de 2026, cuando la Junta de Subastas realizó la Subasta Núm. 8-G; Serie: 2025-2026, Adquisición de hormigón pre-mezclado[2].

Las compañías que sometieron ofertas ante la recurrida fueron RRM y Hormigonera Chaparro. Evaluadas las referidas ofertas, el 5 de mayo de 2026, la Junta de la Subasta del Municipio emitió la *Notificación de Adjudicación, Subasta Núm. 8-G; Serie: 2025-2026, Adquisición de Hormigón Pre-Mezclado*[3] en la cual informó lo siguiente:

[...]

Luego de evaluar y analizar las ofertas recibidas, la Junta de Subasta acordó por unanimidad de los miembros presentes, **adjudicar** la misma. Ante ello, se otorga la buena pro a: **Hormigonera Chaparro dba Expreso Ready Mix**, para el año fiscal 2026-2027.

Los criterios utilizados por la Junta de Subasta para la adjudicación fueron los siguientes:
1. El suplidor cumplió con todos los términos y especificaciones requeridos en el pliego de subasta.
2. Está cualificado y es elegible para recibir la adjudicación de conformidad con las leyes y reglamentos aplicables.
3. La adjudicación beneficia los mejores intereses del Municipio de Aguada.
Las ofertas estuvieron disponibles, para la verificación del licitador presente[4]. (Énfasis provisto).

[...]

Inconforme con el dictamen, el 14 de mayo de 2026, el recurrente presentó el recurso ante nuestra consideración y le imputó a la Junta de Subastas el siguiente señalamiento de error:

Erró la Junta de Subasta del Municipio de Aguada al emitir una notificación de la Junta de Subastas, defectuosa, atípica y contraria a derecho en relación a la Subasta Núm. 8-G; Serie: 2025-2026, Adquisición de Hormigón pre-Mezclado.

El 18 de mayo de 2026, emitimos y notificamos una *Resolución* en la cual le concedimos a la recurrida hasta el 15 de

---

[2] Apéndice 1 de la *Solicitud de Auto de Revisión*, Anejo *Notificación de Adjudicación-Mun.*
[3] Según en el recurso presentado, RRM indicó que la misiva le fue notificada el 11 de mayo de 2026. Véase, pág. 7 de la *Solicitud de Auto de Revisión.*
[4] Apéndice 1 de la *Solicitud de Auto de Revisión*, Anejo *Notificación de Adjudicación-Mun*, pág. 1.

junio de 2026 para presentar su alegato. Tras no cumplir con lo antes solicitado, le concedimos un término final e improrrogable vencedero el 23 de junio de 2026. En cumplimiento con lo anterior, el Municipio sometió su *Alegato* y sostuvo que la adjudicación fue válida. Esto, debido a que, evaluó las propuestas conforme a los criterios establecidos por ley y reglamento, ejerciendo la discreción que le correspondía para determinar cuál oferta favorecía mejor el interés público. Además, señaló que ambos licitadores tuvieron acceso a las propuestas durante la apertura de la subasta y pudieron examinarlas, por lo que rechazó la alegación de falta de acceso a la oferta del licitador favorecido. Finalmente, argumentó que el licitador agraciado cumplió con todos los requisitos del pliego y que la decisión no fue arbitraria ni irrazonable, por lo que procedía confirmar la adjudicación.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**-A-**

La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico establece la autoridad del Tribunal de Apelaciones para revisar "decisiones, órdenes y resoluciones finales de organismos o agencias administrativas"[5]. Por su parte, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU) establece el marco de revisión judicial de estas decisiones[6]. Cónsono con lo anterior, nuestra función revisora se limita a delinear la discreción de las entidades administrativas para garantizar que sus decisiones se encuentren en el marco de los poderes delegados y sean consecuentes con la política pública que las origina[7].

---

[5] Art. 4006(c) de la Ley Núm. 201-2003, 4 LPRA sec. 24(y)(c).
[6] Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675.
[7] *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016); *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007); *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999).

Al mismo tiempo, esta facultad revisora delimita la discreción de los organismos administrativos a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley[8]. *Ahora bien, debemos enfatizar que, al ejercitar dicho criterio, los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias. Son las agencias las que tienen la responsabilidad de aplicar ciertas leyes. Sin embargo, tales interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado[9].*

Es por esta razón, normativa establecida por nuestro Tribunal Supremo dispone: *los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. Pero principalmente, contrario a la práctica de las pasadas décadas, los tribunales **no tienen que darle deferencia a la interpretación de derecho que haga una agencia** simplemente porque la ley es ambigua[10].*

Así pues, la revisión judicial de una decisión administrativa se circunscribe a determinar si hay evidencia sustancial en el expediente. *Sin embargo, en cuanto a las conclusiones de derecho, la misma Ley se limita a rezar que: "serán revisables en todos sus aspectos por el tribunal"[11].*

**-B-**

La subasta formal y el RFP son los dos métodos utilizados por el Estado para adquirir sus bienes y servicios[12]. Como fin principal, estos procesos buscan "proteger el erario, al fomentar la libre y

---

[8] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales*, 2025 TSPR 56, 215 DPR ___ (2025).
[9] *Íd.*
[10] *Íd.*
[11] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales*, 2025 TSPR 56, 215 DPR ___ (2025).
[12] *Transporte Sonnell, LLC v. Junta de Subastas*, 214 DPR 633, 649 (2024).

diáfana competencia entre el mayor número de licitadores posibles"[13].

El RFP "se destaca por ser un procedimiento informal y flexible que permite al oferente negociar con el [G]obierno y enmendar o revisar las ofertas antes de la adjudicación de un contrato de adquisición de bienes y servicios"[14]. Se **recurre a este procedimiento "cuando se trata de la adquisición de bienes o servicios especializados —que involucran asuntos altamente técnicos y complejos— o cuando existen escasos competidores cualificados"**[15]. El RFP debe incluir aquellos requisitos y factores que se utilizarán para la adjudicación del contrato; el valor o peso que se asigne a éstos; y las fechas en que se recibirán y evaluarán las propuestas y se adjudicará la buena pro[16].

Las subastas tradicionales o el RFP que adjudique una Junta de Subastas municipal estarán reguladas por la Ley Núm. 107 de 14 de agosto de 2020, según enmendada, conocida como el "Código Municipal de Puerto Rico" (Código Municipal), y el "Reglamento para la Administración Municipal Núm. 8873" de la Oficina del Comisionado de Asuntos Municipales de 19 de diciembre de 2016 (Reglamento Núm. 8873)[17].

Como regla general, un municipio adjudicará una subasta sobre suministros de servicio, de compras o de construcción al postor más bajo. Esto, debido a que, el objetivo de las subastas es proteger el erario "[c]onsiguiendo la construcción de obras públicas y la adquisición de servicios de calidad para el Gobierno al mejor

---

[13] *Puerto Rico Asphalt v. Junta*, 203 DPR 734, 737 (2019).
[14] *St. James Sec. v. AEE*, 213 DPR 366, 377-378 (2023) citando a *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 531- 532 (2019).
[15] *St. James Sec. v. AEE*, 213 DPR 366, *supra,* pág. 378 citando a R & B Power v. E.L.A., *supra*, págs. 621-622.
[16] *Íd.*, pág. 622.
[17] *PR Eco Park et al. v. Mun. de Yauco, supra*, págs. 533-534.

precio posible"[18]. Conforme con lo antes mencionado, el Artículo 20.040 del Código Municipal dispone que:

> "[l]a Junta entenderá y adjudicará todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de arrendamiento de cualquier propiedad mueble o inmueble y de servicios, tales como servicios de vigilancia, mantenimiento de equipo de refrigeración entre otros"[19].

De igual forma, el inciso (a) del precitado Artículo provee los criterios de adjudicación, los cuales son:

> [...]

> a. Criterios de adjudicación — Cuando se trate de compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor **razonable más bajo**. [...] La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta.
> **La Junta podrá adjudicar a un postor <u>que no sea necesariamente el más bajo</u>** o el más alto, según sea el caso, **si con ello se beneficia el interés público**. **<u>En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación</u>**[20]. (Énfasis nuestro).

> [...]

Por otra parte, el Reglamento Núm. 8873, *supra*, provee la norma general para la adjudicación de las subastas, en lo particular dispone que:

> La adjudicación de las subastas de adquisición, se harán a favor del licitador que esté respaldado por un buen historial de capacidad y cumplimiento y que reúna los siguientes requisitos:
> (a) Que cumpla con los requisitos y condiciones de los pliegos de especificaciones.
> (b) Que sea la más baja en precio o que aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación.
> **<u>De adjudicarse a favor de un licitador que no haya ofrecido el costo más bajo, la Junta de Subastas deberá hacer constar por escrito las razones que justifican la adjudicación. Dicha justificación escrita deberá estar firmada por los miembros de la Junta de Subasta que la favorecieron y debe permanecer en el expediente para fines de auditoria futura</u>**. (Énfasis Nuestro)[21].

---

[18] *Aut. Carreteras v. CD Builders, Inc.*, 177 DPR 398, 404 (2009). Citando a *RBR Const., SE v. AC*, 149 DPR 836, 848–849 (1999).
[19] 21 LPRA sec. 7216.
[20] *Íd.*
[21] Sec. 11, Cap. VIII, Parte II, Reglamento Núm. 8873.

Referente a la controversia que nos ocupa, en la Sección 13 del Capítulo VIII del Reglamento Núm. 8873 dispone que:

[…]

(3) La notificación de adjudicación o la determinación final de la Junta, que se enviará a todos los licitadores que participaron en la subasta, debe contener la siguiente información:
    a) nombre de los licitadores;
    b) síntesis de las propuestas sometidas;
    c) **factores o criterios que se tomaron en cuenta para adjudicar la subasta y razones para no adjudicar a los licitadores perdidoso**s;
    d) derecho a solicitar revisión judicial de la adjudicación o acuerdo final, ante el Tribunal de Apelaciones, y el término para ello, que es dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la notificación de adjudicación;
    e) fecha de archivo en auto de la copia de la notificación y la fecha a partir de la cual comenzará a transcurrir el término para impugnar la subasta ante el Tribunal de Apelaciones[22]. (Énfasis nuestro).

[…]

Conforme a los antes expuesto, nuestro Máximo Foro ha reconocido que el derecho a cuestionar una adjudicación o determinación final, mediante el mecanismo de revisión judicial, es parte del debido proceso de ley[23]. Ante ello, resulta indispensable que se notifique adecuadamente a todas las partes cobijadas por ese derecho[24]. Si no se cumpliera con estas garantías mínimas, el derecho a revisar la determinación de la Junta de Subastas sería ineficaz ya que el propósito de la notificación es que los licitadores perdidosos tengan la oportunidad de solicitar revisión judicial dentro del término jurisdiccional aplicable[25]. Es menester puntualizar que, si la notificación en cuestión adolece de los requisitos establecidos por la legislación y reglamentación, procede devolver el asunto para que se emita una notificación que cumpla con ello[26].

---

[22] Secc. 13, Cap. VIII, Parte II, *Reglamento Núm. 8873*.
[23] *Puerto Rico Asphalt v. Junta, supra*, pág. 740.
[24] *Íd.*
[25] *Íd.*
[26] *Puerto Rico Asphalt v. Junta, supra*, pág. 742.

**III.**

En el caso ante nuestra consideración, RRM adujo que la recurrida incidió al emitir la *Notificación de Adjudicación, Subasta Núm. 8-G; Serie: 2025-2026, Adquisición de Hormigón Pre-Mezclado* por ser ésta una defectuosa, atípica y contraria a derecho.

Por su parte, el Municipio arguyó que, la adjudicación impugnada fue correcta y conforme a derecho, pues actuó dentro de la amplia discreción que le reconoce la ley al evaluar las propuestas y seleccionar al licitador que mejor sirve el interés público. Sostuvo que ambos licitadores estuvieron presentes durante la apertura de las ofertas, tuvieron la oportunidad de examinar y tomar notas de las propuestas de su competidor, por lo que era incorrecto alegar que el recurrente no pudo revisar la oferta del licitador agraciado. Además, afirmó que evaluó toda la documentación sometida, verificó que el licitador seleccionado cumplía con los requisitos del pliego de subasta y que no medió arbitrariedad, capricho, fraude ni mala fe en la adjudicación, por lo que solicitó la confirmación de la decisión recurrida.

Analizado el expediente ante nuestra consideración, surge que la Junta de Subastas informó la identidad de los dos licitadores participantes y expresó que la buena pro fue adjudicada a Hormigonera Chaparro. Asimismo, indicó de forma general que el licitador agraciado cumplió con los términos y especificaciones requeridas, que era elegible para recibir la adjudicación y que esta beneficiaba los mejores intereses del Municipio de Aguada. Sin embargo, la notificación no expone los fundamentos específicos que sustentaron la determinación administrativa, ni permite conocer las razones por las cuales la propuesta seleccionada resultó superior a la presentada por RRM.

Es norma reiterada que las notificaciones de adjudicación en los procesos de subasta pública deben contener información

suficiente para permitir que los licitadores afectados puedan ejercer de manera efectiva su derecho a revisión judicial. Ello requiere que la notificación revele, de forma clara y adecuada, los fundamentos que motivaron la decisión administrativa. De lo contrario, se imposibilita que la parte adversamente afectada conozca las bases de la adjudicación y formule adecuadamente sus planteamientos en revisión.

**En el caso de marras, la *Notificación de Adjudicación, Subasta Núm. 8-G; Serie: 2025-2026, Adquisición de Hormigón Pre-Mezclado* contiene únicamente expresiones conclusorias y generales que no permiten identificar los criterios específicos considerados por la recurrida ni evaluar la razonabilidad de la adjudicación realizada. Tampoco incluye información que permita conocer cómo fueron evaluadas las propuestas sometidas ni las razones particulares que justificaron la selección de la oferta favorecida. Como consecuencia, la notificación resulta insuficiente para cumplir con los requisitos de debido proceso de ley y para viabilizar una revisión judicial efectiva.**

Por consiguiente, procede revocar la determinación recurrida y devolver el asunto a la Junta de Subastas del Municipio de Aguada para que emita una nueva notificación de adjudicación que contenga una exposición adecuada de los fundamentos de su decisión, de conformidad con la normativa y jurisprudencia aplicable.

### IV.

Por los fundamentos antes expuestos, ***revocamos*** la resolución recurrida y devolvemos el caso a la Junta de Subastas del Municipio de Aguada para que realice una adecuada adjudicación de la *Subasta Núm. 8-G; Serie: 2025-2026, Adquisición*

*de Hormigón Pre-Mezclado* y, posterior a ello, emita una nueva notificación de adjudicación conforme a derecho.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones